## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### NORTHERN DIVISION
### ASHLAND

| | |
|---|---|
| **LISA BROWN,** | **CIVIL ACTION NO. 0:21-43-KKC** |
| **PLAINTIFF,** | |
| **v.** | **ORDER AND OPINION** |
| **LEWIS COUNTY PRIMARY CARE CENTER, INC., d/b/a PrimaryPlus** | |
| **DEFENDANT.** | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on a motion filed by Defendant Lewis County Primary Care Center, Inc., d/b/a PrimaryPlus ("PrimaryPlus") for sanctions against Plaintiff Lisa Brown ("Brown"). (DE 33.) For the following reasons, that motion is granted and the case is dismissed.

## I.   Background

On April 12, 2019, Brown, a registered nurse working at PrimaryPlus, suffered a concussion in a workplace accident. As a result, Brown had regular migraines, vision issues, nausea, and suffered some cognitive impairment. Brown was left unable to work consistently at PrimaryPlus and sought intermittent leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, for the days when she was too sick to work. Brown submitted her first application for FMLA leave in October 2019, which was signed by her treating neurology provider, Laura Sova ("Sova"), an advanced practice registered nurse at the Southern Ohio Medical Center. PrimaryPlus approved this application and allowed Brown to take intermittent leave when she was unable to attend work.

Brown's condition did not improve, and, in August 2020, Sova referred Brown to the Ohio State University Wexner Center ("OSU Wexner") for specialized treatment of traumatic brain injuries. This treatment would require Brown to travel to OSU Wexner one day every week for an eight-week period. Although Brown's original FMLA application for intermittent leave had not been fully exhausted, Brown completed another application with Sova's assistance to account for the eight days that she would be traveling to receive treatment from OSU Wexner. According to PrimaryPlus, in accordance with the eight-week treatment plan, Sova noted on the FMLA application that the one-day-a-week absences would last from "8/25/20 through 10/13/20"—a period lasting exactly eight weeks. (DE 32-1 at 10.) Brown testified that she provided this application to Jody Jones, her site manager, who subsequently forwarded the application to Michelle McCane, PrimaryPlus's Administrative Assistant to the CEO. Nothing in the record suggests that Brown was not able to attend each of her OSU Wexner treatments.

For most of her time at PrimaryPlus, Brown worked with only one nurse practitioner, Stacy Hasenauer. During the summer of 2020, PrimaryPlus encountered difficulties in covering Brown's increasing absences. This led CEO Jerry Ugrin to reassign Brown to the position of "float nurse," which provided Hasenauer with more consistent coverage and accommodated Brown's need for flexibility.[1]

After September 11, 2020, Brown did not return to work and continued to use her FMLA leave for her absences, including the OSU Wexner treatment sessions. On October 20, 2020, PrimaryPlus terminated Brown's employment because Brown was unable to return to work. Brown continued to receive treatment for her condition and eventually filed her

---

[1] Although Brown's pay and benefits remained unchanged, she maintains that the role reassignment was a "demotion." (DE 41 at 2, 8, 14.)

2

Complaint (DE 1-1) on April 15, 2021. The parties have engaged in extensive written discovery and have completed no fewer than seven depositions, and now PrimaryPlus moves for the Court to impose sanctions on Brown.

The second FMLA application lies at the heart of PrimaryPlus's motion for sanctions. PrimaryPlus alleges that, during discovery, Brown provided a *nearly* identical copy of the second FMLA application containing a fraudulent alteration to support her FMLA interference and retaliation claims. (DE 33 at 1.) The August 2020 FMLA application that Brown produced during discovery contained the exact same information as the application in PrimaryPlus's possession—but with one major difference. At the portion of the application where Sova filled out the duration of the requested intermittent leave, Brown's version of the application specified that the period of requested leave would last from "8/25/20 through 10/13/2021[.]" In other words, Brown's copy had a "21" attached to the end date that would appear to extend her intermittent leave from eight weeks to 60 weeks. PrimaryPlus alleges that (1) Brown intentionally falsified the application and (2) the appropriate sanction against Brown should be dismissal of the case. The Court is persuaded that Brown altered the second FMLA application and, for reasons stated below, her case should be dismissed.

## II.   Analysis

### a.   Falsified FMLA Application

Following an evidentiary hearing on PrimaryPlus's motion for sanctions, the Court concludes that Brown intentionally falsified the year on her copy of the August 2020 FMLA application to improve her interference and retaliation claims. The federal circuits are split on whether the appropriate standard of proof for finding sanctions is by the preponderance of the evidence or by clear and convincing evidence. *Compare Ramirez v. T & H Lemont, Inc.*, 845 F.3d 772, 778 (7th Cir. 2016) (explaining that dismissal as a sanction does not need to be established by clear and convincing evidence), *with Shepherd v. Am. Broad. Cos., Inc.*, 62

F.3d 1469, 1476–78 (D.C. Cir. 1995) (requiring clear and convincing evidence), *and Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (also requiring clear and convincing evidence). Although the Sixth Circuit "has not expressly addressed" the issue of the standard required to prove the conduct underlying a court's sanctions, courts have noted that it would "likely not require the higher burden of clear and convincing proof." *Plastech Holding Corp. v. WM Greentech Automotive Corp.*, 257 F.Supp.3d 867, 873 (E.D. Mich. 2017); *see also Williamson v. Recovery Ltd. P'ship*, 826 F.3d 297, 302 (6th Cir. 2013) (holding that the test used to decide whether a judgment should be vacated for fraud on the court under Rule 60, which requires clear and convincing evidence, "is not applicable in this case because this case involves a court's inherent power to sanction" for bad-faith conduct).

Despite this circuit split, neither Brown nor PrimaryPlus briefed the Court on the applicable standard in their filings regarding the motion for sanctions.[2] Given both parties' agreement regarding the applicable standard and the potential severity of the sanction, the Court will assess the facts and arguments under this higher standard of proof. Even under this higher standard of proof, PrimaryPlus has met its burden and showed by clear and convincing evidence that Brown falsified the date on her copy of the second FMLA application and fraudulently produced it during discovery.

The totality of the circumstances points to only one person who had anything to gain from the alteration of the second FMLA application: Lisa Brown. The only other individuals who could have made the alteration—Sova or someone working in Sova's office—lack a plausible motive for making such a drastic alteration of the application's date. Brown,

---

[2] PrimaryPlus does point out that the Court may consider the totality of the circumstances when making its decision regarding sanctions, but nonetheless fails to explain whether preponderance of the evidence or clear and convincing evidence is the appropriate standard of proof in a motion for sanctions. (DE 43 at 1–2.)

however, needed the date extended to 2021 to sustain her interference claim under the FMLA. The only contested element of Brown's interference claim is whether she was denied FMLA benefits that she was entitled to.[3] In her Complaint, Brown alleges that PrimaryPlus denied Brown's application for FMLA benefits after October 16, 2020. This is the only viable basis for her interference claim—if and only if the Court accepts the altered copy of the second FMLA application as accurate.[4] If Brown was truly entitled to FMLA benefits and intermittent leave through October 13, 2021, she could not rightfully be terminated unless PrimaryPlus could indisputably show that she could not return to work after that date. *See Edgar*, 443 F.3d at 506–07; *Cehrs v. Ne. Ohio Alzheimer's Rsch. Ctr.*, 155 F.3d 775, 784–85 (6th Cir. 1998); *Williams v. Toyata Motor Mfg., Ky.*, 224 F.3d 840, 845 (6th Cir. 2000) (concluding that the employee had suffered no harm when she was terminated because she was unable to resume her duties by the end of the FMLA leave period), *rev'd on other grounds*, 534 U.S. 184 (2002). Accordingly, Brown altered the date in order to avoid termination and maintain a viable interference claim.

---

[3] To prevail on an FMLA interference claim, an employee "must prove that: (1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled." *Edgar v. JAC Prods.*, 443 F.3d 501, 507 (6th Cir. 2006). The first four elements are undisputed by both parties. (DE 32-1 at 20.)

[4] Brown attempts to base her interference claim on three other allegations: (1) PrimaryPlus refused to permit Brown to take leave for medical appointments during her scheduled workdays; (2) PrimaryPlus removed Brown from her office and denied her access to a computer necessary to perform work; and (3) PrimaryPlus encouraged Brown's co-workers to lodge complaints against her for taking FMLA leave. (DE 1-1 at 6.) Not only was Brown able to attend all of her appointments with OSU Wexner, (DE 32-1 at 14) the second and third allegations are more appropriately brought under Brown's retaliation claim as (arguable) adverse employment actions. *See Edgar*, 443 F.3d at 508 (stating that one element of an FMLA retaliation claim is that the employer took an adverse employment action against the employee after learning of the employee's exercise of her rights under the statute). As such, the only possible basis for Brown's interference claim arises under her fourth allegation regarding FMLA benefits after October 16, 2020.

As previously discussed, Brown's copy and PrimaryPlus's copy of the same FMLA application differed only in the duration of requested intermittent leave. PrimaryPlus produced the copy in their possession, which contained a durational period that matches exactly the treatment plan that Brown was to receive at OSU Wexner—an eight-week treatment lasting from 8/25/20 through 10/13/20. As PrimaryPlus points out, the requested time "makes sense" because "August 25, 2020, was a Tuesday and October 13, 2020, was the eighth consecutive Tuesday." (DE 33 at 3.) Brown alleges that she submitted a second FMLA application despite the leave in her original application having yet to be exhausted because she wanted to make sure that she could take those treatment days off from work. Indeed, the period of leave in PrimaryPlus's copy "makes sense." The requested leave in Brown's copy does not.

Brown produced a copy of the second FMLA application that was exactly the same as PrimaryPlus's copy except for one difference: the end date for the requested leave had a "21" added to the end, extending her requested leave by another 52 weeks. It was undisputed that Brown was in sole possession of this copy; PrimaryPlus alleges that it had never seen her copy of the second application until Brown produced it during discovery. Nevertheless, Brown used that extended date in her Complaint to argue that PrimaryPlus interfered with FMLA benefits to which she was entitled. (DE 1-1 at 4–6.) It became apparent to the Court that Brown was the only person with a motive to fraudulently alter the date of her requested FMLA leave—now, Brown could argue that she was denied leave for days that were not originally requested in the second FMLA application. When pressed on how or why this difference between the FMLA applications happened, Brown's counsel was unable to provide a logical explanation.

During the evidentiary hearing on this matter, Brown's counsel attempted to explain how this distinction between the copies came to be. Brown, supposedly, was confused about

the dates listed on the second FMLA application and traveled to Sova's office to ask about them, which led to one of Sova's staff taking the application and returning it to her with the changed end date. Somehow, Brown's counsel argues that this explains the discrepancy. The Court strongly disagrees with that assessment. Nothing in the record indicates that Brown was unable to appreciate her medical appointments and their scheduled times. From the time she suffered her head injury, Brown took leave when she was unable to work and received various medical treatments over the years. Brown expressly went to Sova to fill out the second FMLA application because she wanted time to attend her eight-week treatment with OSU Wexner. What confusion could reasonably exist as to the date range listed in the second application—8/25/20 through 10/13/20—when Brown knew that her treatment with OSU Wexner was eight weeks and the date range was exactly eight weeks? The Court has been provided with no explanation.

Brown's counsel's argument that someone in Sova's office added the "21" to the date is unpersuasive. Despite Brown's claim that Sova was "unwilling to say definitely that the writing in question was not hers," (DE 38 at 6) Sova explicitly said in her deposition that the writing "does not look like [her] handwriting." (*Id.* at 5.)  Further, it makes no sense for Sova or anyone in her office responsible for FMLA applications to extend the date to 60 weeks. The FMLA allows employees to take leave in a defined (or rolling) 12-month period—i.e., a 52-week period. United States Department of Labor, *The Employer's Guide to the Family and Medical Leave Act* 51 (2023). It follows that any professional such as Sova, who regularly helps patients complete FMLA applications, would know that 60 weeks is beyond the amount of leave allowed by the FMLA. Even if there had been a mistake on Brown's application, the record showed that Sova's staff had an established method of correcting mistakes in official

documents.[5] No such method was employed on Brown's copy of the application. When given the opportunity to clarify her only explanation behind the application's discrepancy, Brown declined to take the stand during the evidentiary hearing.

The Court finds the evidence unambiguous. Brown was the only person in possession of the altered FMLA application and was the only person who stood to gain from its alteration. While the burden of proof rests with the defendant in this matter, PrimaryPlus has presented compelling evidence of its claim and Brown has given nothing to rebut its claims—excluding, of course, an excuse for who wrote the "21" that makes no logical sense. Accordingly, the Court finds that PrimaryPlus proved by clear and convincing evidence that Brown altered the date on her copy of the second FMLA application and produced the falsified document during discovery. The Court turns now to the question of what sanctions are appropriate for this dishonest conduct.

### b.    Appropriate Sanctions

Federal courts have the inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). Outright dismissal of the underlying case, as requested by PrimaryPlus, is a "particularly severe sanction," yet has been upheld by the Supreme Court as "within the court's discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980). The Court recognizes that federal courts must "exercise caution in invoking its inherent power, and [they] must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Chambers*, 501 U.S. at 50 (citing *Roadway Express*, 447 U.S. at 767). The exercise of these inherent powers is reviewed under an abuse of

---

[5] If corrections were necessary, the appropriate method in Sova's office was to "draw a line through [the mistake] and . . . write error and put your initials." (DE 33 at 5.)

discretion standard. *Williamson v. Recovery Ltd. P'ship*, 826 F.3d 297, 301 (6th Cir. 2016). Guided by these principles, the Court finds that dismissal is the appropriate sanction for the fraud committed in this case.

PrimaryPlus uses *Carroll-Harris v. Wilkie* to support its claim that dismissal is the appropriate sanction for the Court to issue against Brown. *See* 2020 U.S. App. LEXIS 9996 (6th Cir. 2020). In *Carroll-Harris*, a district court dismissed an employee's Rehabilitation Act, ADA, and Title VII claims after the defendant moved for sanctions and the plaintiff admitted that she altered emails produced during discovery to "achieve the EEOC outcome that she desired." *Id.* at *6. The plaintiff never explained the discrepancies in the language emails she produced until she was confronted with the two versions of the documents. *Id.* at *5–6. The Sixth Circuit affirmed the district court's dismissal, acknowledging that "submitting altered documents during discovery is akin to providing false testimony, which the Supreme Court has recognized as 'intolerable' conduct that 'should be severely sanctioned in appropriate cases[.]'" *Id.* at *7 (quoting *ABF Freight Sys., Inc., v. NLRB*, 510 U.S. 317, 323 (1994). Further, the Sixth Circuit noted that "the materiality of the changes is not particularly relevant." *Id.* at *6. Because "willful fabrication of evidence 'commits a fraud on the court,' it would be strange if the 'sanction of dismissal depended only on the falsehood's relevance to the parties' claims, and failed to account for the act's interference with the judicial process.'" *Carroll-Harris v. Wilkie*, 2019 WL 2205851, at *6 (E.D. Mich. 2019) (quoting *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1181 (10th Cir. 2009)).

Brown argues that *Carroll-Harris* is inapplicable to the matter at hand because, unlike the plaintiff in that case, Brown has not admitted to altering the FMLA application's date. The Court finds that this distinction makes no difference. An admission by Brown at this point would be a redundancy; PrimaryPlus has already shown by clear and convincing

evidence that Brown altered the FMLA application. In fact, the only plausible explanation for the difference in the documents is that Brown altered the one in her possession. Just as Carroll-Harris attempted to wave away her alterations by characterizing them as "personal notes," *id.* at *4, Brown has attempted to point the finger at Sova. This, as the Sixth Circuit noted in *Carroll-Harris*, "makes little sense." *Id.* at *5.

Brown's conduct was egregious. Even if Brown correctly asserted that the alteration is "irrelevant to the litigation[,]"[6] (DE 38 at 4) the Court has already noted that the materiality of the changes is not particularly relevant. What *is* relevant is that Brown intentionally produced an altered document during discovery to improve whatever claims she believed she had under the FMLA. The Court does not take this falsification lightly. As the Supreme Court stated in *ABF Freight System, Inc.*, this conduct is "intolerable" and should be "severely sanctioned in appropriate cases." 510 U.S. 317, 323 (1994). In a case such as this, where the evidence makes it plain that Brown altered the document and still Brown stands firm on an implausible excuse, the Court finds that dismissal is the appropriate sanction to remedy this abuse of the judicial process.

Even if Brown's case were to survive this motion for sanctions, the Court notes that Brown's claims are, at best, weak—and at worst, nonexistent. Without her altered application as evidence, Brown was not entitled to any FMLA benefits after October 13, 2020.[7] Her other allegations in support of her interference claim are either on its face untrue

---

[6] The Court fails to understand how the extended date on the altered application is irrelevant when, as discussed in Part II(c), Brown has no interference claim without the application's validity.

[7] With the altered document, Brown would have a weak interference claim. She was the only person who possessed that version of the application; PrimaryPlus and Sova claim that they had never possessed the altered document before it was produced during discovery. (DE 33 at 3.) It would be up to the fact-finder to judge the weight of the two versions and whether Brown was truly entitled to benefits beyond October 13, 2020.

or more appropriate for a retaliation claim.[8] That being said, the only direct evidence that Brown produces supporting the conclusion that Ugrin retaliated against her for taking FMLA leave is a statement that she claims Ugrin made to her.[9] Whether that statement is credible or not would have been a question for the fact-finder.[10] Regardless, because of the weakness of the underlying claims and the egregiousness of the Brown's misrepresentation, the Court finds that dismissal is the proper sanction in this case.

## III.   Conclusion

The Court hereby orders as follows:

1.      Defendant's motion for sanctions against Lisa Brown (DE 33) is GRANTED;

2.      The case is hereby DISMISSED and SHALL be STRICKEN from the docket; and

3.      Defendant's motion for summary judgment (DE 32) is DENIED as moot.

This 6th day of September, 2023.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

---

[8] The record shows that Brown was given every day of FMLA that she requested and more. (DE 32-1 at 21.) Further, PrimaryPlus has produced medical evidence from both Brown's physical therapist and expert witness to support that she would not have been able to return to work on October 13, 2020, (DE 32-1 at 23) while Brown provides only unsubstantiated allegations that she could have returned to work. (DE 41 at 32.) As for the other allegations arguably supporting a retaliation claim, see *supra* note 4.

[9] Brown alleges Ugrin told her: "Are you going to miss any more work and use your FMLA? Because if you are, I'm going to replace you." (DE 41 at 14.)

[10] Even if the alterations do not impact the evidentiary weight of the case, "'[a] party's willingness to fabricate evidence bears on character and credibility, which often [are] broadly at issue in a given case.'" *Carroll-Harris*, 2019 WL 2205851, at *6 (quoting *Garcia*, 569 F.3d at 1181).